UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VINCENT HENDERSON                          CRIMINAL ACTION

VERSUS                                     NO: 09-20

UNITED STATES OF AMERICA                   SECTION: J

## ORDER AND REASONS

Before the Court for sentencing on September 2, 2009 is Defendant, Vincent Henderson, a/k/a/ "Tonto," who has pled guilty to four counts of knowingly and intentionally distributing a quantity of cocaine base ("crack") in violation of Title 21, United States Code, Sections 841(1)(1) and 841(b)(1)(C).

## PROCEDURAL HISTORY AND BACKGROUND FACTS

On seven separate transactions, Mr. Henderson sold controlled substances to undercover agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Louisiana State Police. In relation to these transactions, Mr. Henderson was charged in a seven count indictment with one count of Distributing Less than 50 Kilograms of Marijuana, in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(D); one count of Distributing Less than 50 Kilograms of Marijuana and a Quantity of Cocaine Hydrochloride, in violation of 841(a)(1), 841(b)(1)(D), and 841(b)(1)(C); one count of Distributing a Quantity of Heroin, in violation of 841(a)(1) and 841(b)(1)(C); and four counts of Distributing a Quantity of Cocaine Base, in

violation of 841(1)(1) and 841(b)(1)(C).

Mr. Henderson pled guilty to the four counts of distributing a quantity of cocaine base. He is also responsible for certain quantities of other drugs as detailed below.

The quantity of controlled substances included 7.47 grams of crack, .56 grams of heroin, .68 grams of cocaine hydrochloride, and 42.93 grams of marijuana. After the applicable conversion to grams of marijuana for sentencing purposes, Mr. Henderson's combined total of controlled substances converted to 150.139 kilograms of marijuana, placing him within the base offense level of 24 and a sentencing guideline range of 77-96 months.[1]

The severity of Mr. Henderson's converted total was augmented by the 100:1 conversion disparity between cocaine base and cocaine hydrochloride. In fact, according to alternative sentencing guidelines prepared by Probation, had a ratio of 1:1 for cocaine base and cocaine hydrochloride been used for the conversion, Mr. Henderson's converted total would equal 2.234 kilograms of marijuana, placing him within the base offense level

---

[1] United States Sentencing Guidelines Section 2D1.1 states that if an individual is charged with the distribution of more than one type of controlled substance, the weight of the substances are converted into grams of marijuana. Mr. Henderson's controlled substance weight converted into 150.139 kilograms of marijuana, placing him within the base offense level of 26. However, the impact of this conversion is somewhat diminished by an automatic two level reduction in the guidelines for conversions consisting of more than one form of cocaine. U.S.S.G. § 2D1.1, note 10. This reduction resulted in Mr. Henderson's guidelines decreasing from 26 to 24. Mr. Henderson's extensive criminal history places him within the criminal history category of VI, resulting in a sentencing guidelines range of 77-96 months.

of 10 and a sentencing guidelines range of 24-30 months before applicable reductions.[2]  After carefully considering the two alternatives, this Court has decided to reject the 100:1 ratio, and sentence Mr. Henderson according to a 1:1 crack-to-powder ratio.

## **DISCUSSION**

This Court's authority to reject the 100:1 ratio has been recognized by the United States Supreme Court in both <u>United States v. Kimbrough</u>, 552 U.S. 85, 128 S. Ct. 558 (2007) and <u>Spears v. United States</u>, ___ U.S. ___, 129 S. Ct. 840 (2009).  In <u>Kimbrough</u>, the Supreme Court stated that the Anti-Drug Abuse Act of 1986 "does not require . . . courts to adhere to the 100:1 ratio for crack cocaine quantities *other than those that trigger a statutory mandatory minimum sentence*."  <u>Kimbrough</u>, 552 U.S. at ___, 128 S. Ct. at 572 (emphasis added).  The Court followed <u>Kimbrough</u> with the <u>Spears</u> decision, which made it clear that a sentencing court can use policy grounds to categorically reject the 100:1 crack-to-powder ratio.  <u>Spears</u>, ___ U.S. at ___, 129 S. Ct. at 843-44.  The Court stated that in lieu of the 100:1 ratio, courts can adopt some other well-reasoned basis for sentencing in

---

[2]Using a 1:1 ratio, the 7.47 grams of crack would convert to 1.494 kilograms of marijuana instead of 149.4 kilograms, which would apply under the 100:1 ratio.  Therefore, the difference in the conversion applicable to the varying ratios is an astonishing 148 kilograms and a 14 level reduction in the base offense level guidelines.  Mr. Henderson is however eligible for a two level reduction for accepting responsibility for his actions in this matter.

3

crack cases.  Id. at 844.

The question then becomes what ratio forms a well-reasoned basis for sentencing in this and similar cases.  While some courts continue to approve use of the 100:1 ratio, U.S. v. Coleman, 319 Fed. Appx. 228 (4th Cir. 2009), U.S. v. Pollino, 2009 WL 1164962 (4th Cir. 2009), others have adopted something between 100:1 and 1:1.  In fact, it appears that a 20:1 ratio has been increasingly popular.  See U.S. v. Perry, 389 F. Supp. 2d 278 (D.R.I. 2005), U.S. v. Smith, 359 F. Supp. 2d 771 (E.D. Wis. 2005).  Nevertheless, some courts have determined that the both the 20:1 and the 100:1 ratios lack empirical basis or data.  U.S. v. Gully, 619 F. Supp. 2d 633 (N.D. Iowa 2009), U.S. v. Lewis, 623 F. Supp. 2d 42 (D.D.C. 2009)

In determining what ratio to adopt, this Court has reviewed, among other opinions, Judge Mark Bennett's opinion in Gully.  In a well reasoned opinion, the Gully Court discussed several policy reasons for rejecting the harsher sentencing guidelines imposed on those individuals convicted of crack violations as opposed to powder violations.  This Court finds the policy reasons discussed in Gully to be very persuasive and therefore adopts the methodology used in Gully.

As stated in Gully, the 100:1 ratio is inconsistent with the goal of the 1986 Act because it tends to punish low-level crack traffickers more severely than major traffickers of powder

4

cocaine.  Gully, 619 F. Supp. at 639.  Further, the ratio has had a disproportionate impact on black offenders and "fosters disrespect for and lack of confidence in the criminal justice system."  Id. (citing Kimbrough, 552 U.S. at ___, 128 S. Ct. at 568).

Also, as recognized in Gully, "the 100:1 ratio does not exemplify the [Sentencing] Commission's exercise of its characteristic institutional role."  Gully, 619 F. Supp. at 640-41 (quoting Spears, ___ U.S. at ___, 129 S. Ct. at 843.  The Commission did not use its empirical approach in developing the Guidelines sentences for drug-trafficking offenses.  Gully, 619 F. Supp. at 641.  Instead, the Commission employed the 1986 Act's weight driven scheme which is the result of Congressional mandates interfering with and undermining the work of the Sentencing Commission.  Id. This was all based on an assumption at the time about the relative harmfulness of crack cocaine and powder cocaine and the harms that come with trafficking in those substances.  Id. Recent research and data has revealed that these assumptions lack merit.  Id.

It is true that there are many cases in which people who use crack cocaine may be more likely to be involved in using weapons or committing assaults or other acts of violence.  But trying to use 100:1 or any other ratio other than 1:1 as a proxy for these other harms that may or may not be present in a particular case

makes little sense.  Further, while an individual's characteristics, background, criminal history, propensity for violence and recidivism can, and should, play a role in determining what sentence to impose, these factors should not be used to determine the base offense guideline calculation. Instead, these factors should be considered in determining whether a variance from the guidelines should be imposed in accordance with 18 U.S.C. § 3553(a).

As a result, this Court hereby exercises its discretion in rejecting the 100:1 ratio.  This Court has determined that the methodology of using a 1:1 crack-to-powder ratio, and subsequently varying up or down from the guidelines as necessary to comply with § 3553(a), is an appropriate and well-reasoned sentencing method which this Court will use in this, and all future crack cases.

Therefore, this Court adopts the alternative sentencing guidelines, setting Mr. Henderson's initial base offense level at 10.  This base offense level is reduced by two, to level 8, because Mr. Henderson has accepted of responsibility for his actions in this matter.  As detailed in the Pre-Sentencing Investigation Report, Mr. Henderson's extensive criminal background places him within the Criminal History Category of VI. His guidelines therefore reflect 18 to 24 months incarceration, 3 years of supervised release, a fine of $1,000 to four million

dollars, and a special assessment of $400.

Nevertheless, in accordance with § 3553(a), it is the job of this Court to impose a sentence which takes into account the nature and the circumstances of the offense, as well as the character and history of the defendant. It is also the duty of this Court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence to criminal conduct, protects the public from further crimes of the defendant, and provides the defendant with needed education, vocational training, medical care, or other correctional treatment.

This being said, this Court will exercise its discretion in varying from the guidelines for the following reasons.

Mr. Henderson, currently 35 years of age, has an extremely serious past criminal history which includes significant history of abusing illegal drugs. He began using marijuana on a daily basis at age 15. He is also a heroin addict, inhaling the drug twice daily since the age of 31. Mr. Henderson has received help for his drug addictions. In 1999, he underwent drug treatment through a boot camp program while serving a State custody sentence. Nevertheless, upon his release, he returned to drug use, using both marijuana and heroin regularly until his recent arrest.

Also, Mr. Henderson's employment history is very sporadic

and minimal.  His lack of steady work suggests that he has been
supporting himself by his illegal drug dealing over the years.
He lacks vocational skills and does not hold a high school
diploma or a G.E.D.  His brief employment history includes
working for a few months at a temporary service earning $7 an
hour; working for a short time as a dishwasher while living in a
halfway house in 1996; and, for a couple of years in the early
part of the 1990's, cutting grass.

Additionally, Mr. Henderson's criminal history is
remarkable.  At age 19, he pled guilty to distribution of crack
cocaine and possession of crack.  He was sentenced to 5 years,
received an early release, and subsequently violated his
probation.  His probation was consequently revoked and he was
remanded to prison.  On three more occasions during this five
year probationary period, Mr. Henderson was released from, and
remanded back to, prison for violating the terms of his
probation.

At the age of 24, he was charged with making verbal threats
to State probation and parole officers, running away from the
officers when they attempted to transport him, and resisting
arrest by kicking and fighting the officers.  To these charges,
he pled guilty to attempted simple escape and battery of a police
officer.  He was sentenced to 6 months.

At the age of 27, Mr. Henderson pled guilty to possession of

crack. He was sentenced to 2 years prison, placed on probation, violated his probation, and was remanded to custody for two years.

Mr. Henderson also has a history of aggressive violence towards women. In 2005 he pled guilty to simple battery for striking a woman with a closed fist. In a separate incident, but also in 2005, he pled guilty to striking the same woman in her face, causing her lip to swell.

Additionally, in 2007 Mr. Henderson pled guilty to trespass charges and he was also sentenced to 6 months on charges of possession of heroin.

Mr. Henderson's astonishing criminal history has "earned" him 17 criminal points. The guidelines call for a Criminal History Category of VI for anything over 13 points - indicating that Mr. Henderson's criminal history is simply off the charts. Mr. Henderson also has a number of pending charges against him. These pending charges include allegations of attempted theft, simple criminal damage to property, and multiple charges of domestic violence.

Mr. Henderson's drug use, lack of work history, and extensive criminal history all factor into his sentencing. The impact of these factors are however mitigated somewhat by his troubled youth and family history. His parents were divorced while he was very young. At the age of 7, Mr. Henderson was

placed in the group home, where he lived until he was 16 years old.  He undoubtedly was affected by these circumstances, as the sentencing investigation report indicates he had several runaway charges between the ages of 14 and 16.

In balancing the aforementioned information, this court has decided to vary upward from the sentencing guidelines.  Mr. Henderson has a history of violence, recidivism, and repeated criminal offenses.  This suggests that he is a classic recidivist who will likely continue to offend unless he is incarcerated.  He is a drug pusher and addict in need of substantial prison time and treatment to deal with his addiction.  He can also benefit from the development of further education and vocational skills.  More importantly, it is incumbent on this Court to protect the public from further repeated criminal conduct by Mr. Henderson, which he will undoubtedly continue unless a substantial sentence is imposed.

## **CONCLUSION**

In light of the foregoing discussion, this Court adopts a 1:1 crack to powder ratio in determining the base offense level in this case, as well as all future crack cases.  Considering the sentencing factors set forth in 18 U.S.C. § 3553, this Court will impose a sentence of 72 months, a sentence substantially greater than the guidelines, but not greater than what is necessary given the facts in this case.

New Orleans, Louisiana, this 10th day of September, 2009.

                                                                                               _____
                                                                                                 United States District Judge